United States District Court
Southern District of Texas
**ENTERED**
November 10, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARRETT D. PARKER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-1828 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY | § | |
| and ASHLEY ROBINSON, | § | |
| Individually and in His Capacity | § | |
| as Athletic Director for Prairie View | § | |
| A&M University, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Second Amended Motion to Dismiss the First Amended Complaint (the "Motion") [Doc. # 16][1] filed by Defendants Prairie View A&M University ("PVAMU") and Ashley Robinson ("Robinson"), individually and in his capacity as Athletic Director for Prairie View A&M University. With his Response [Doc. # 19] to the Motion, Plaintiff then

---

[1] Plaintiff filed his Original Complaint and Jury Demand [Doc. # 1] on June 26, 2015. Defendant moved to dismiss [Doc. # 8] on August 13, 2015. Because Plaintiff filed a First Amended Complaint [Doc. # 11], the Court denied the then-pending motion to dismiss as moot. *See* Order [Doc. # 12].

Defendants filed an Amended Motion to Dismiss [Doc. # 14] on September 8, 2015, and then filed the Second Amended Motion to Dismiss [Doc. # 16] on September 16, 2015.

filed a Second Amended Complaint [Doc. # 18] without leave of the Court or Defendants' consent. Defendants filed a Reply [Doc. # 22].

On November 2, 2015, the Court heard argument on the Motion (the "Hearing"). *See* Hearing Minutes and Order [Doc. # 24]. With the consent of the parties, the Court granted Plaintiff leave to file the Second Amended Complaint and it became Plaintiff's operative pleading. All agreed the Motion would be deemed a response to the Second Amended Complaint (hereinafter, the "Complaint"). The Motion is now ripe for determination. After considering the parties' briefing and oral arguments, all matters of record, and the applicable legal authorities, the Court **grants in part and denies in part** the Motion.

## I.     BACKGROUND

Plaintiff alleges that he was employed as a videographer for PVAMU from July 22, 2013 to November 24, 2013. Complaint [Doc. # 18], at 2, ¶ 4. Plaintiff alleges that he was never paid for his work from July 22, 2013 through September 18, 2013. *Id.*, at 5, ¶ 22. On September 19, 2013, PVAMU made Plaintiff a formal offer of employment, which offer Plaintiff accepted the following day. *Id.*, at 4, ¶ 20; *see also* Complaint, Exh. 3 [Doc. # 18-3]. On October 11, 2013, Plaintiff purportedly received a paycheck for the period September 19, 2013 through October 2, 2013, for 80 hours regular time and 82 hours of overtime. Complaint [Doc. # 18], at 5, ¶ 23. Robinson then allegedly told Plaintiff that he would not be

compensated for overtime worked after October 2, 2013, but Robinson allegedly required Plaintiff to work 70 to 80 hours per week throughout the remainder of the football season. *Id.*, at 5, ¶ 24.

Plaintiff alleges that Robinson personally had the power to hire and fire employees (including Plaintiff), that he supervised and controlled work schedules, determined the rate and method of Plaintiff's payment, maintained in whole or in part the Athletic Department's employment records, and had managerial responsibility over the Athletic Department. *Id.*, at 3–4, ¶ 13. Plaintiff alleges that Robinson failed to keep adequate records of Plaintiff's work hours and pay. *Id.*, at 8, ¶ 35. Signficantly, Plaintiff further alleges that PVAMU had a policy of compliance with the FLSA, but claims that Robinson violated or subverted PVAMU's policy. *Id.*, at 4, ¶¶ 14–15.

The Complaint seeks damages for (1) failure to pay a minimum wage in violation of 29 U.S.C. § 206, (2) failure to pay overtime in violation of 29 U.S.C. § 207, (3) breach of contract, and (4) failure to keep adequate records of Plaintiff's work hours and pay in violation of 29 U.S.C. § 211(c). Defendants have moved pursuant to Federal Rule of Civil Procedure 12 to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## II.     LEGAL STANDARD

Plaintiff has invoked the Court's subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Defendants have moved to dismiss for lack of subject matter jurisdiction because they contend that they are entitled to state sovereign immunity. Motion [Doc. # 16], at 3–6; *see Alden v. Maine*, 527 U.S. 706, 712 (1999).

There is no evidence that any Defendant waived its sovereign immunity. When there is a challenge to the court's subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing that jurisdiction exists. *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014); *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it "appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction." *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013) (quoting *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009), *vacated on other grounds*, 608 F.3d 266 (5th Cir. 2010) (*en banc*) (*per curiam*)). "[U]nder Rule 12(b)(1), the court may consider any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts

4

plus the court's resolution of disputed facts.'" *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008).

Here, Defendant has not disputed the facts Plaintiff alleges.  Nor has Defendant introduced any other materials for the Court's consideration.  The Court therefore decides the Motion at this preliminary stage on the allegations as stated in the Complaint.

## III. ANALYSIS

The Complaint's caption lists as Defendants PVAMU and Robinson, individually and in his capacity as Athletic Director for Prairie View A&M University.  Plaintiff has conceded that PVAMU and Robinson in his official capacity are entitled to sovereign immunity.[2]  Therefore, all claims against PVAMU and Robinson in his official capacity are deemed abandoned and are **dismissed with prejudice**.  References to PVAMU and Robinson in his official capacity are **stricken** from the Complaint.

At the Hearing, without meaningful objection by Plaintiff, the Court also **dismissed with prejudice** Plaintiff's breach of contract and FLSA recordkeeping

---

[2] Response [Doc. # 19], at 3 ("There is no dispute that the University and Defendant Robinson in his **official** capacity is [*sic*] entitled to sovereign immunity pursuant to the Eleventh Amendment of the Constitution.").

claims against Robinson in his individual capacity.[3] The only remaining claims in this action are Plaintiff's claims against Robinson in his *individual* capacity for violations of 29 U.S.C. §§ 206 and 207 (respectively, the minimum wage and overtime provisions of the FLSA). Defendants have moved to dismiss these claims as barred by sovereign immunity on the ground that the state is the real party in interest.

The FLSA does not abrogate state sovereign immunity. *See, e.g.*, *Alden*, 527 U.S. at 712. The Fifth Circuit has indicated, however, that it may be possible to bring an FLSA action against a state official in his *individual* capacity if the state is not the real party in interest. *See Henley v. Simpson*, 527 F. App'x 303 (5th Cir.

---

[3] The Court concluded that there was no viable breach of contract claim against Robinson in his individual capacity, as he did not individually contract with Plaintiff. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) ("Our analysis of the policy is confined within the four corners of the policy itself.").

There is no individual cause of action for violations of the recordkeeping provisions of the FLSA. *See, e.g.*, *McCloud v. McClinton Energy Grp.*, No. 7:14-cv-0120, 2015 WL 4460338, at *2 (W.D. Tex. July 20, 2015) (citing *Castillo v. Givens*, 704 F.2d 181, 198 n.41 (5th Cir. 1983)). Plaintiff responded that he merely pled the violation to invoke an evidentiary "burden shifting" framework. Response [Doc. # 19], at 6; *see also* Complaint [Doc. # 18], at 9, ¶ 38 (explaining that Plaintiff is not asserting recordkeeping violations "as an independent cause of action"). The Court accordingly dismisses the recordkeeping claim. *See Perez v. T.A.S.T.E. Food Prods., Inc.*, No. 5:13-CV-655-DAE, 2014 WL 412327, at *6 (W.D. Tex. Feb. 3, 2014) (noting that dismissal of a recordkeeping claim "does not preclude Plaintiffs from presenting evidence of alleged recordkeeping violations in support of their properly pleaded FLSA claims").

2012) (*per curiam*).[4] The question is whether the suit against Robinson in his individual capacity is, in effect, a suit against the state.

Defendants rely solely on *Henley* to argue that PVAMU (the State of Texas) is the real party in interest in this action. Like Parker, the *Henley* plaintiffs pressed a claim for unpaid overtime wages against certain state officials in their individual capacity.[5] The *Henley* plaintiffs were Mississippi state troopers in a canine unit. As written in an official manual, Mississippi's policy for canine units required the troopers to house, feed, and groom their dogs at their personal residences.[6] According to the *Henley* plaintiffs, compliance with the official policy resulted in significant overtime work. Although the plaintiffs' suit named State officials in their individual capacities, the Fifth Circuit determined they were

---

[4] In some circumstances, supervisors or managers may be individually liable under the FLSA. *Lee v. Coahoma County*, 937 F.2d 220, 226 (5th Cir. 1991) ("An employer under the FLSA includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d). The term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work . . . .' *Falk v. Brennan*, 414 U.S. 190, 194 (1973)."). Defendants have not argued that Robinson was not an "employer" within the meaning of the FLSA. For the purpose of deciding the Motion, the Court assumes without deciding that Robinson was Plaintiff's employer as defined by the FLSA.

[5] Amended Complaint, *Henley v. Simpson*, No. 3:10-cv-0590-DPJ-FKB (S.D. Miss. Jan. 20, 2011) [Doc. # 22].

[6] *Mississippi Highway Safety Patrol K-9 Policy Manual*, Plaintiffs' Rule 7(a) Reply to Defendants' Answer, Exh. 1, *Henley v. Simpson*, No. 3:10-cv-0590-DPJ-FKB (S.D. Miss. Apr. 20, 2011) [Doc. # 36-1].

7

nevertheless "challenging the State's compensation policy and whether their caring for . . . service canines resulted in an accrual of overtime hours." 527 F. App'x at 307. The Fifth Circuit concluded that the *Henley* plaintiffs were suing the officials in their individual capacity to force the State of Mississippi to accept their view of Mississippi's compensation policy. This claim was held to constitute an impermissible end-run around state sovereign immunity because Mississippi was the real party in interest. *Id.*

The *Henley* court contrasted the plaintiffs' allegations with hypothetical scenarios in which the Court of Appeals suggested that the claim might not have been barred by state sovereign immunity. The Fifth Circuit noted the lack of allegations that "[d]efendants acted contrary to the written . . . policy manual in order to misappropriate wages for their own benefit" or that "[d]efendants enforced that policy inappropriately." *Id.*

The facts alleged in Parker's Complaint at bar are legally distinct from those pursued in *Henley*. Here, Parker has alleged that Robinson was acting contrary to PVAMU's policy of paying overtime in compliance with the FLSA and that any FLSA violations resulted from Robinson's unilateral actions. Accepting those allegations as true because Defendants have not contested Plaintiff's factual assertions, *Henley* does not control the disposition of the Motion. Plaintiff's FLSA claims are expressly asserted only against Robinson in his individual capacity.

8

Defendants are not aided by their citation of *Luder v. Endicott*, 253 F.3d 1020 (7th Cir. 2001). *See* Motion [Doc. # 16], at 6. *Henley* adopted the reasoning of *Luder* and, like *Henley*, *Luder* is distinguishable from the case at bar. The plaintiffs in *Luder* sought damages from Wisconsin state officials, sued in their individual capacities, under the FLSA for unpaid overtime. The plaintiffs alleged various pre-shift and post-shift tasks counted as "work" as defined by the FLSA, but, at the time of the suit, that was an open question of law in the Seventh Circuit. *Id.* The Seventh Circuit determined that sovereign immunity barred the suit because the plaintiffs were attempting to force Wisconsin "to accede to their view of the [FLSA] and to pay them accordingly." *Id.*, at 1024. The Seventh Circuit contrasted that case with the following hypothetical example:

> [S]uppose the state had a firm policy of complying with the FLSA. Indeed, to make it an even clearer case, suppose the state required even more generous overtime pay for its employees than the Act requires. Suppose that a state supervisory employee . . . misread the Act to require the payment of overtime pay only if an employee had worked more than 100 hours in the preceding week. . . . A suit against him would advance rather than thwart state policy and would impose a minuscule or perhaps even a negative burden on the state.

*Id.* at 1023–24. The allegation in the Complaint that Robinson violated a state policy of compensation for overtime in compliance with the FLSA is comparable to the *Luder* court's hypothetical example. Like *Henley*, *Luder* does not provide sufficient ground to conclude that the Court lacks subject matter jurisdiction.

9

In finding that Mississippi was the real party in interest, the *Henley* court also relied on the fact that "the payment of any wages owed Plaintiff must ultimately come from the State treasury (indeed, Defendants may not have the ability to pay)." 527 F. App'x at 307; *see generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984). Although voluntary indemnification by the State does not implicate the Eleventh Amendment, the *Henley* Court concluded that the State would "have no choice but to indemnify Defendants; otherwise the risk of personal liability for implementing a State policy would guarantee no rational official would assume Defendants' state-office positions." 527 F. App'x at 303; *see also Luder*, 253 F.3d at 1024 (same). Here, Plaintiff does not allege that Robinson was "implementing a State policy." Rather, Plaintiff contends Robinson was *violating* that policy. Complaint [Doc. # 18], at 6, ¶ 25. Personal liability based on the allegations in the Complaint would not have the same chilling effect on State employees as a finding of personal liability in *Henley* would have had on employees accused of enforcing State policy. Moreover, Parker's claims against Robinson in his individual capacity will not necessarily require payment of funds from the state treasury.

Defendants argue that permitting this case to proceed under Plaintiff's theory of individual FLSA liability would render state sovereign immunity a dead letter in FLSA cases. *See* Reply [Doc. # 22], at 3 ("Unless a state agency has a

policy <u>not</u> to follow the FLSA, any public official accused of violating the FLSA would logically also violate the agency's policy—and by Plaintiff's flawed logic, be acting individually. This would *always* allow an end-run around 11th Amendment immunity."). Defendants' assertions regarding sovereign immunity and the import of *Henley* fall of their own weight. *Henley*'s *dicta* does not shield rogue supervisors within state agencies from personal liability for individual violations of the FLSA or the agencies' implementing regulations and policies.

At this preliminary stage, Defendants' arguments do not defeat Plaintiff's allegations that the Court may have subject matter jurisdiction over the FLSA claims against Robinson in his individual capacity as pleaded in the Complaint. Factual development on these issues is appropriate and necessary to an informed decision on the viability of Plaintiff's claims against Robinson in his individual capacity.[7]

## IV.   **CONCLUSION AND ORDER**

Based on the foregoing analysis, the Court concludes that Prairie View A&M University and Ashley Robinson in his official capacity are entitled to state sovereign immunity, but that the allegations in the Complaint support the exercise of subject matter jurisdiction over Plaintiff's FLSA claims against Robinson in his

---

[7]   A motion for summary judgment may be filed at any time after the parties have engaged in reasonable discovery.

individual capacity. There is, however, no individual cause of action for violations of the recordkeeping provisions of the Fair Labor Standards Act, 29 U.S.C. § 211(c). The Court therefore **grants in part and denies in part** Defendants' Second Amended Motion to Dismiss [Doc. # 16]. Accordingly, it is hereby

**ORDERED** that Plaintiff's claims against Defendants Prairie View A&M University and Ashley Robinson in his official capacity as Athletic Director for Prairie View A&M University are **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's claims for alleged breach of contract and recordkeeping violations of 29 U.S.C. § 211(c) against Defendant Ashley Robinson in his individual capacity are **DISMISSED with prejudice**. It is further

**ORDERED** that Defendant's Second Amended Motion to Dismiss [Doc. # 16] is **DENIED without prejudice** as to Plaintiff's claims for violations of 29 U.S.C. §§ 206 and 207 against Defendant Ashley Robinson in his individual capacity. It is further

**ORDERED** that Plaintiff must file a Third Amended Complaint in conformity with this Memorandum and Order.

SIGNED at Houston, Texas, this 10 day of **November, 2015.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE